IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LEE PADILLA,

Plaintiff,

vs. Civ. No. 11-452 RHS

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 15). The Court considered the Motion, Response (Doc. 17), Reply (Doc. 18), and the supporting documentation, and denies Plaintiff's Motion.

**CASE HISTORY**

Plaintiff Lee Padilla (hereinafter referred to as "Plaintiff") asserts that he has been disabled since November 1, 2004 due to back problems and depression (Administrative Record (AR 140, 163)). He filed his claim for supplemental social security income on September 30, 2007, which was denied (AR 19, 60-62). On December 10, 2007, Plaintiff requested reconsideration, which was also denied (AR 63-64). After denial, Plaintiff requested a hearing (AR 69-71). The Administrative Law Judge (ALJ) held a hearing on January 20, 2010 (AR 29). Plaintiff was represented by counsel (AR 29). At the hearing, Plaintiff testified about additional medical conditions: fibromyalgia, numbness and tingling in his arms and asthma (AR 40). The onset date of Plaintiff's disability was amended to June 27, 2007 as Plaintiff had previously

applied for benefits. There was a determination on that claim based on the same facts and issues. This previous determination became final by either administrative or judicial action, 20 C.F.R. § 416.1457(c)(1) (AR 19).

On February 26, 2010, the ALJ issued a written decision concluding that Plaintiff was not disabled (AR 19-26). Plaintiff appealed to the Social Security Administration's Appeal Council, which declined review on March 24, 2011 (AR 1). Plaintiff filed his complaint on May 27, 2011 seeking court review of the ALJ's decision (Doc. 1).

## ISSUES FOR REVIEW

In determining disability, the ALJ is required to apply a five-step sequential evaluation process. 20 C.F.R. § 404.1520. This Court reviews the ALJ's decision-making process. At the first step of the analysis, the ALJ determined that Plaintiff is not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I) (AR 21). This favorable finding is not disputed nor discussed here.

In the second step, the ALJ considered whether Plaintiff has a severe medical impairment (20 C.F.R. § 404.1521(b) and 20 C.F.R. § 416.920(b)) and found that Plaintiff does have severe impairments including cervical, thoracic and lumbar spinal disorders with scoliosis (AR 21). Plaintiff objected to this finding and asserted that the ALJ committed legal error by failing to develop the record regarding the severity of Plaintiff's depression and by failing to find that his depression was a severe impairment.

For step three, the ALJ concluded that Plaintiff does not have an impairment that meets or medically equals one of the listed impairments (AR 23). Plaintiff did not dispute the finding and therefore it is not discussed here.

Prior to step four, the ALJ reviewed Plaintiff's residual functional capacity and determined that Plaintiff has the residual functional capacity to perform the full range of sedentary work as defined by 20 C.F.R. § 416.967(a) (AR 23). Plaintiff asserts that the ALJ erred in determining that he was not credible (AR 24).

At the fourth step, the ALJ considered whether, in light of Plaintiff's residual functional capacity, Plaintiff could still perform his past relevant work. The ALJ determined that the Plaintiff could not perform any past relevant work (AR 259).

In step five, the ALJ determined whether Plaintiff could perform jobs in the national economy, given his age, education, work experience, and residual functional capacity assessment. In part based on the Vocational Expert's testimony, the ALJ concluded that there are several positions that are sedentary and unskilled that Plaintiff could perform and therefore he was not disabled (AR 25-26). Plaintiff disputes this and argues that substantial evidence does not support the ALJ's decision at step five because the ALJ did not consider Plaintiff's non-exertional psychiatric impairments and his chronic pain (Doc. 15).

**STANDARD OF REVIEW**

The Court's review of the administrative decision is both factual and legal. The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1259 (10th Cir. 2005). Substantial evidence is less than a preponderance, Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ

followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court performs an independent review ". . . of the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence." Adams ex rel. D.J.W. v. Astrue, 659 F.3d 1297, 1301 (10th Cir. 2011) (citing Krauser v. Astrue, 638 F.3d 1324, 1327 (10th Cir. 2011)). However, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Adams, 659 F.3d at 1301.

## ANALYSIS

Plaintiff raises three points of error: (1) whether the ALJ erred in failing to develop the severity of Plaintiff's mental impairment; (2) whether the ALJ erred in evaluating Plaintiff's credibility; and (3) whether the ALJ improperly applied the "grids" at step five.

### I.
### THE ALJ DID NOT ERR AT STEP TWO BY NOT ADDRESSING WHETHER PLAINTIFF'S DEPRESSION WAS A SEVERE IMPAIRMENT.

At step two, the ALJ determined that Plaintiff did have a severe impairment and advanced the Plaintiff's case to step three (AR 21). Even though the ALJ found that Plaintiff satisfied step two due to a cervical, thoracic and lumbar spinal disorder with scoliosis, he complains that the ALJ did not also address his mental impairment of depression. Plaintiff asserts that the ALJ was required to consider whether his depression was also a severe impairment. Plaintiff argues that because the ALJ did not analyze his alleged mental impairment, the ALJ's decision should be reversed.

Once the ALJ found for Plaintiff at step two, there is not any requirement that the ALJ continue to consider alternate grounds to support the ALJ's favorable decision. *See* 20 C.F.R. §

404.1520 and § 416.920. This Circuit has previously stated, "a claimant is required to establish, and an ALJ is required to find, only one severe impairment." Dray v. Astrue, 353 Fed. Appx. 147,149 (10th Cir. 2009) (citations omitted).

Although the ALJ is not required to consider additional conditions once a severe impairment has been determined, the ALJ did evaluate Plaintiff's claimed disorder of depression to determine whether it was severe (AR 21-22). He considered the "four broad functional areas set out in the disability regulation for evaluating mental disorders" (AR 22). The ALJ determined that Plaintiff did not have any limitations in activities of daily living, social functioning or concentration, persistence or pace (AR 22). Further, the ALJ found that Plaintiff did not experience any episodes of decompensation (AR 22). Ultimately the ALJ found that Plaintiff's alleged mental impairment was "non severe" because his mental impairment "causes no more than 'mild' limitation" in accordance with 20 C.F.R. § 416.920a (d)(1) (AR 22). Plaintiff asserts that the ALJ "misstates the record by saying claimant was not under care for his psychiatric condition" (Doc. 15 at 4). Plaintiff is mistaken, the ALJ actually states that "[h]e is currently not under the care of a mental health professional" and then concludes that his symptoms "are not significant or limiting and therefore not severe" (AR 22).

The ALJ also evaluated Plaintiff's fibromyalgia claim and found that the medical records contain insufficient evidence to support a fibromyalgia diagnosis (AR 22). The ALJ determined that the alleged fibromyalgia was also not a severe impairment (AR 22).

The ALJ reviewed the medical records and considered all of Plaintiff's conditions to determine their severity. Therefore, this Court concludes that the ALJ did not err in finding that Plaintiff had only one severe impairment.

**II.**
**SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT PLAINTIFF IS NOT CREDIBLE (RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT STEP).**

Plaintiff alleges that the ALJ's lack of credibility finding is not supported by substantial evidence because the finding is conclusory and "used boilerplate language to minimize the claimant's pain without fulfilling his legal obligation to assess the claimant's chronic pain" (Doc. 16). In his decision, the ALJ discredited Plaintiff's testimony. The ALJ determined that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment" (AR 23-24).

"Credibility is the province of the ALJ." Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1499 (10th Cir. 1992). An ALJ "is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference." White v. Barnhart, 287, F.3d 903, 910 (10th Cir. 2002). "In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true" SSR 96-7p, 1996 WL 374186 (S.S.A.). Social Security Ruling 96-7p addresses consistency and credibility: "One strong indication of the credibility of an individual's statement is their consistency, both internally and with other information in the case record." The ALJ supported his lack of credibility finding with specific evidence from the record. The ALJ focused on Plaintiff's allegations that he is unable to work due to scoliosis of the spine, depression, asthma and fibromyalgia (AR 23) and whether the medical records supported his testimony.

The ALJ found that the Plaintiff's depressive disorder is not considered a severe impairment (AR 23-24). Specifically, the ALJ found that Plaintiff's "mental impairment of depression does not cause more than a minimal limitation" (AR 22). The ALJ stated in his evaluation of Plaintiff's alleged mental impairment that Plaintiff's "testimony and some UNM records are inconsistent" (AR 22). The ALJ cited to the state agency medical consultants' assessments concluding that Plaintiff's alleged mental impairment was non-severe which is also contrary to Plaintiff's testimony (AR 24).

The ALJ found that Plaintiff's alleged fibromyalgia was not a severe impairment (AR 23-24). Although Plaintiff asserts that his fibromyalgia is disabling, the records do not "provide a definitive diagnosis of fibromyalgia" (AR 22). The ALJ cited to Dr. Edward Fancovic's written statement dated April 30, 2003 which "did not definitively diagnose fibromyalgia" (AR 22).

The ALJ's decision considered Plaintiff's complaints that "he is unable to sit for long periods due to back pain, is able to walk 1-block and stand for 20-30 minutes" (AR 24). The ALJ noted that Plaintiff takes Vicodan for pain which reduces his pain and has adverse effects of drowsiness and constipation (AR 24). The ALJ reviewed the UNM records which documented Plaintiff's idiopathic scoliosis and chronic low back pain (AR 24). Based on his review, the ALJ determined that functional limitations prevent Plaintiff from returning to medium or heavy work but would allow Plaintiff to perform sedentary work (AR 24). The ALJ also cited to the Physical Residual Functional Capacity Assessment wherein Dr. Werner concludes that work at the light exertional level is possible with "postural limitations" (AR 24). However, the ALJ found that the record supported "a RFC for sedentary work due to restrictions in standing and walking and lifting and carrying over 20-pounds" (AR 24).

At the hearing, Plaintiff testified that he was receiving intermittent treatment from a chiropractor but the ALJ noted that there were no chiropractic treatment records to support Plaintiff's testimony (AR 24). Plaintiff argued that the ALJ "failed to address the assessment by the claimant's treating chiropractor" (Doc. 16 at 11). There are no treatment records, and no functional capacity assessment corresponding with the Plaintiff's testimony. There is one lone record from Plaintiff's chiropractor, Dr. Thomas H. Soapes, dated December 17, 2010 (AR 391). This record was submitted by Plaintiff to the Social Security Administration (SSA) in December 2010, almost ten months after the ALJ issued his decision (AR 391).

Dr. Soapes' record was submitted for consideration at the Appeals Council level (AR 4). The Appeals Council did not discuss or analyze Dr. Soapes' record in its notice of unfavorable ruling; however, the Council stated that, "[i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council" (AR 1). The "enclosed order" stated that the Council received additional evidence and made it part of the record, specifically listing "Representative's Brief from Edward W. Goodman, Esq. dated February 26, 2010" and "Statement by Dr. Thomas H. Soapes dated December 17, 2010" (AR 4).

A social security claimant may submit additional material after an ALJ's decision is entered. O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). Such evidence becomes part of the record for purposes of review by the Appeals Council and, if the case proceeds to District Court, for purposes of evaluating the SSA's decision for substantial evidence. 20 C.F.R. § 404.970(b) (2008); O'Dell, 44 F.3d at 858. When such additional evidence is submitted, the SSA's final decision "necessarily included the Appeals Council's conclusion that the ALJ's

findings remained correct despite the new evidence." O'Dell, 44 F.3d at 859.

The Court is required "to consider the new evidence to determine whether it outweighs the evidence that was before the ALJ when he made his decision, without regard to the absence of any agency analysis." Stephens v. Callahan, 971 F.Supp. 1388, 1391 (N.D.Okla.1997) (citing O'Dell, 44 F.3d at 858-59). The Stephens court, though concerned with the lack of analysis, stated that the Appeals Council is not required by any regulation to discuss or analyze the new evidence. Stephens, 971 F.Supp. at 1392. "If the Appeals Council fails to consider qualifying new evidence, the case should be remanded for further proceedings." Threet v. Barnhart, 353 F.3d 1185, 1191 (10th Cir. 2003).

The Court rejects Plaintiff's assertion that the "ALJ failed to address the assessment by the claimant's treating chiropractor" (Doc. 16 at 11). The Appeals Council specifically notified Plaintiff that it had considered Dr. Soapes' report but "found that this information does not provide a basis for changing the Administrative Law Judge's decision" (AR 2). Dr. Soapes' assessment stated that he has treated Plaintiff since 1994, and concluded that "it is very difficult to do any type of physical work without being in pain" (AR 391). Plaintiff did not provide any chiropractic treatment records, or functional capacity assessment that concluded Plaintiff was disabled.

The ALJ reviewed medical records for treatment prior to the amended onset date of June 27, 2007 through December 2008 (AR 24). Although "the record remained open for proffering of updated medical records at the time of writing this decision no recent records have been submitted" by Plaintiff to the ALJ (AR 24). The ALJ reviewed all records submitted by Plaintiff (AR 21, 23-24), and found that while there is evidence documenting his pain

complaints, the medical findings do not support Plaintiff's assertions that he is totally disabled by back pain. While Plaintiff asserted that he is totally disabled, the ALJ stated that "no treating source has restricted the claimant's activities or advised the claimant against working" (AR 24). Plaintiff urges this Court to interpret the ALJ's statement to mean that the ALJ found ambiguity in the medical records (Doc. 16 at 5) and that when an ambiguity exists, case law imposes a duty on the ALJ "to recontact a treating physician" or "order a consultative exam" (Doc. 16 at 5). The Court disagrees as the ALJ's finding is based on his review of the records (AR 24). The ALJ reviewed medical records and found that the records were not consistent with the severity of the Plaintiff's subjective complaints. There is substantial medical evidence to support the ALJ's conclusion that Plaintiff's testimony about his capacity was not credible and there is not any reason to remand this issue.

**III.**
**THE ALJ DID NOT COMMIT LEGAL ERROR AT STEP FIVE WHEN HE FOUND JOBS THAT PLAINTIFF COULD PERFORM IN THE NATIONAL ECONOMY.**

Plaintiff argues that the ALJ did not consider Plaintiff's claimed non-exertional impairments in determining what work he could perform (Doc. 16). He further asserts legal error in that the ALJ mechanically applied the "Grids" to determine that Plaintiff was not disabled. At step four, Plaintiff had the burden to show that he cannot return to his past relevant work. Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984). If the ALJ concludes that a claimant cannot perform any of his past work based on his residual functional capacity, then at step five, the ALJ must show that there are jobs in the economy that a claimant can perform with his specific limitations. Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The ALJ meets this burden if the decision is supported by substantial evidence. Haddock, 196

F.3d at 1088.

Also at step five, the Social Security Administration's generalized medical-vocational guidelines ("Grids") can be used to resolve disability questions. Evans v. Chater, 55 F.3d 530, 531 (10th Cir. 1995). The Grids "set forth rules that identify whether jobs requiring specific combinations of the four factors. . . residual functional capacity, age, education, and work experience – exist in the national economy" Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988). The ALJ must make findings of fact as to age, education, work experience and residual functional capacity to apply the Grids. 20 C.F.R §§ 404.1545, 404.1563-1565, 416.945, 416.963-965. The Grids may be applied when the ALJ's findings precisely match a Grid category, Gossett, 862 F.2d at 806, and when a claimant can perform a substantial majority of the work in the designated RFC category. Evans, 55 F.3d at 532. In those instances where the ALJ may properly rely on the grids, the ALJ does not need to call a vocational expert to testify. Evans, 55 F.3d at 531. When a claimant presents evidence of claimed non-exertional impairments, such as pain or mental limitation, the Grids are not conclusive but instead are used merely to provide a framework for the disability determination. SSR 96-9P, 1996 WL 374185 (S.S.A.); Huston v. Bowen, 838 F.2d 1125, 1131-32 (10th Cir. 1988).

The record belies Plaintiff's arguments that the ALJ mechanically applied the Grids. The ALJ determined at step four that Plaintiff was unable to return to his past relevant work. At step five, the ALJ determined that Plaintiff is not disabled because there were jobs in the economy that he can perform given his limitations (AR 25-26). As described below, the ALJ's findings that were favorable to Plaintiff demonstrates that the ALJ considered the medical records, Plaintiff's testimony and the vocational expert's testimony to make his ultimate determination of

"not disabled." The assessment prepared by Dr. Mark Werner, a consultative physician, concluded that Plaintiff could perform light work; however, the ALJ found that the record as a whole supported a finding that Plaintiff's residual functional capacity was sedentary (AR 24). The ALJ's reduction of Plaintiff's residual functional capacity from light to sedentary reflects that the ALJ did consider non-exertional limitations as well as his chronic pain. Contrary to Plaintiff's argument that the ALJ mechanically applied the Grids is the fact that the ALJ elicited the testimony of Diane Weber, a vocational expert ("VE") (AR 47). The VE identified several sedentary jobs and provided the Dictionary of Occupational Title numbers that would be appropriate for Plaintiff in light of his sedentary residual functional capacity (AR 48-49). The record clearly demonstrates that the ALJ did not "mechanically" apply the Grids as he did consider Plaintiff's pain and mental limitations and the vocational expert's testimony. The Court, therefore, concludes that the ALJ did not commit reversible error at step five.

The Social Security Administration's decision that Plaintiff is not disabled is supported by substantial evidence in the administrative record. Therefore, the Court concludes that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 16) should be denied and that the case be dismissed with prejudice.

**IT IS THEREFORE ORDERED** that the Motion to Reverse or Remand Administrative Agency Decision (Doc. 16) is DENIED and this matter is dismissed with prejudice.

Robert Hayes Scott

ROBERT HAYES SCOTT
UNITED STATES MAGISTRATE JUDGE